(807 P.2d 1327)

No. 65,454

DAMIEN PODREBARAC, *Appellee*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellant*.

Opinion filed March 22, 1991.

*James G. Keller,* of Kansas Department of Revenue, for appellant.

*Steven L. Davis,* of Patton, Davis & Putnam, of Emporia, for appellee.

Before BRISCOE, C.J., BRAZIL and ELLIOTT, JJ.

BRAZIL, J.: The Kansas Department of Revenue (KDR) appeals from the district court's order reinstating the driving privileges of Damian Podrebarac after an administrative suspension. The district court determined that the breath test KDR relied on to suspend Podrebarac's license was invalid because the breath sample was collected more than two hours after Podrebarac operated a vehicle. We reverse and remand with directions.

KDR contends the district court erred in applying the two-hour limitation on test results found in K.S.A. 1990 Supp. 8-1567(a)(2) (the criminal DUI statute) to administrative suspension actions under the implied consent law, K.S.A. 8-1001 *et seq.* It argues that the definition of "test failure" under the implied consent statute contains no two-hour limitation, and such omission should be considered a reasoned decision by the legislature that no such limit was necessary regarding administrative suspensions.

The appellate scope of review in this case is de novo. Here, the district court granted Podrebarac relief from administrative action on the basis that the agency "erroneously interpreted or applied the law." K.S.A. 77-621(c)(4). The interpretation of a statute and its application to the facts of any particular case is a judicial function, and this court has specifically held that agency action resulting in a driver's license suspension is a judicial function. *Angle v. Kansas Dept. of Revenue,* 12 Kan. App. 2d 756, 763, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988). When the district court grants relief on the basis of an erroneous interpretation or application of law by the agency, an appellate court should make the same review of the agency's action as does the district court. *537721 Ontario, Inc. v. Mays,* 14 Kan. App. 2d 1, 2, 780 P.2d 1126 (1989). Administrative interpretation of a statute is entitled to great weight and consideration, but the final construction of a statute rests with the courts. *National Gypsum*

*Co. v. Kansas Employment Security Bd. of Review*, 244 Kan. 678, 682, 772 P.2d 786 (1989); *Amoco Production Co. v. Arnold, Director of Taxation*, 213 Kan. 636, Syl. ¶¶ 4 and 5, 518 P.2d 453 (1974).

The effect of the district court's holding is to read the two-hour limitation in the criminal DUI statute into the definition of test failure under the implied consent statute, K.S.A. 1990 Supp. 8-1013(h). This holding disregards the plain language of the provisions of the implied consent statute, which imposes no such limitation. Podrebarac contends that the two-hour limitation must be read into the definition of test failure; otherwise the implied consent statute would be unconstitutionally vague.

When construing a statute, it is this court's duty to reconcile different statutory provisions to make them consistent, harmonious, and sensible, and to construe the statute to give effect to the legislative intent as determined from a general consideration of the entire act. *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987). Furthermore, the constitutionality of a statute is presumed and all doubts must be resolved in favor of its validity. *State v. Huffman*, 228 Kan. 186, Syl. ¶ 1, 612 P.2d 630 (1980). With these principles in mind, a general consideration of the implied consent act illustrates that no two-hour limitation applies to the admissibility of test results for administrative suspension purposes, and the definition of "test failure" contained in the act is not unconstitutionally vague.

Under the implied consent statute, a police officer investigating an accident involving property damage, personal injury, or death is required to request a person to submit to an alcohol test if, based on the officer's personal knowledge or the collective information available to an officer, the officer has *"reasonable grounds to believe"* the person operated or attempted to operate a vehicle while under the influence of alcohol. (Emphasis added.) K.S.A. 1990 Supp. 8-1001(b). If the person fails the test, the officer is required to prepare a certification alleging that:

"(A) There existed *reasonable grounds to believe* the person was operating a motor vehicle while under the influence of alcohol or drugs, or both; (B) the person had been placed under arrest, was in custody or had been involved in a motor vehicle accident or collision; (C) a law enforcement officer had presented the person with the oral and written notice required

by K.S.A. 8-1001 and amendments thereto . . . ; and (D) the result of the test showed that the person had an alcohol concentration of .10 or greater in such person's blood or breath . . . ." (Emphasis added.) K.S.A. 1990 Supp. 8-1002(a)(2).

On a breath test failure, the officer must also certify that the Kansas Department of Health and Environment certified the equipment used to perform the test as well as the person performing it and that the test procedures used were in accordance with that department's requirements. K.S.A. 1990 Supp. 8-1002(a)(3). The act defines a test failure as "a person's having results of a test *administered pursuant to this act,* . . . which show an alcohol concentration of .10 or greater in the person's blood or breath." (Emphasis added.) K.S.A. 1990 Supp. 8-1013(h).

A test failure has two distinct consequences. First, the person's driver's license is subject to an automatic administrative suspension by the KDR, the length of which varies depending on whether the failure is a first occurrence or a second or subsequent occurrence. K.S.A. 1990 Supp. 8-1014(b). Second, the test failure can be introduced in a criminal action against the person and constitutes "prima facie evidence" of the violation of a criminal statute or ordinance prohibiting the operation of a motor vehicle while under the influence of alcohol. K.S.A. 1990 Supp. 8-1005(b).

Based on the language used in the statutes cited above, a test may be administered and a driver's license administratively suspended due to a test failure when the following conditions occur: (1) a law enforcement officer has *reasonable grounds* to believe a person was driving while intoxicated, (2) the person was arrested for DUI or was involved in an automobile accident, (3) the officer presented the person with the oral and written notices required by K.S.A. 1990 Supp. 8-1001(f)(1), and (4) the test was conducted pursuant to the proper procedures and the equipment and equipment operator are properly certified. K.S.A. 1990 Supp. 8-1002(c), (f); K.S.A. 1990 Supp. 8-1014(b). The use of the term "reasonable grounds" to believe a person operated a vehicle while intoxicated indicates the legislature's intent to allow administrative suspensions for driving while intoxicated on less strict standards of proof than a criminal conviction for driving with a blood alcohol concentration of .10 would require.

Podrebarac contends that a person could have his license administratively suspended based on a test result when the test did not occur until long after the person last drove a vehicle. This concern is addressed by the language of the implied consent statute, which requires a law enforcement officer to have reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol. These reasonable grounds must exist *before* an officer can request a person to submit to a test. K.S.A. 1990 Supp. 8-1001(b). The longer the delay between the operation of the vehicle and the administration of the test, the more unreasonable the officer's grounds become for believing the person drove while under the influence of alcohol.

Reversed and remanded with directions to reinstate the KDR's order.