(8 P.3d 45)

No. 83,675

STATE OF KANSAS, *Appellee*, v. JEFFREY GEE, *Appellant*.

Opinion filed July 14, 2000.

*Ted E. Smith*, of Huser & Smith, P.A., of Manhattan, for the appellant.

*P. Bernard Irvine*, assistant county attorney, and *Carla J. Stovall*, county attorney, for the appellee.

Before MARQUARDT P.J., PIERRON, J., and ROGG, S.J.

PIERRON, J.: After failing a blood-alcohol test on June 18, 1998, Jeffrey Gee was charged in municipal court with driving under the influence of alcohol (DUI) pursuant to a city ordinance mirroring K.S.A. 1999 Supp. 8-1567. While the municipal charge was pending, the Kansas Department of Revenue (KDR) suspended Gee's driver's license for 1 year following an administrative hearing. The KDR suspended Gee's license because of the June 18 failure of the blood-alcohol test.

On January 21, 1999, while the municipal charge was still pending, Gee was arrested and charged in district court with DUI, driving while suspended (DWS), failure to maintain a single lane of traffic, and making an improper right turn.

Gee subsequently entered pleas of no contest in the district court to both DUI charges and the DWS charge. He was sentenced in both cases on June 21, 1999. On the DWS charge, Gee was sentenced to 90 days' imprisonment.

At sentencing, the parties argued whether K.S.A. 1999 Supp. 8-262(a)(4) required a mandatory 90-day imprisonment under the particular circumstances. After hearing argument on both sides and reviewing the statutory language, the district court determined that

8-262(a)(4) did mandate 90 days' imprisonment in the present case and so sentenced Gee.

The central issue of this appeal is whether an administrative driver's license suspension pursuant to K.S.A. 1999 Supp. 8-1014 constitutes a suspension for a violation of 8-1567 for sentencing purposes under 8-262(a)(4.

This issue is one of statutory interpretation, a question of law, and appellate review is unlimited. *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998).

The starting point for analysis is with K.S.A. 1999 Supp. 8-262(a)(4):

"If a person (A) is convicted of a violation of this section, committed while the person's privilege to drive was suspended or revoked for a violation of K.S.A. 8-1567, and amendments thereto, or any ordinance of any city or a law of another state, which ordinance or law prohibits the acts prohibited by that statute, and (B) is or has been also convicted of a violation of K.S.A. 8-1567, and amendments thereto, or of a municipal ordinance or law of another state, which ordinance or law prohibits the acts prohibited by that statute, committed while the person's privilege to drive was so suspended or revoked, the person shall not be eligible for suspension of sentence, probation or parole until the person has served at least 90 days' imprisonment, and any fine imposed on such person shall be in addition to such a term of imprisonment."

We note that the DUIs occurred in June 1998 and January 1999, and 8-262 was amended in 1999, but the changes are not relevant to the issue here.

Where criminal statutes are concerned, the rule of strict construction applies, and any ambiguities must be resolved in favor of the accused. *State v. Kelly*, 14 Kan. App. 2d 182, 186, 786 P.2d 623 (1990). K.S.A. 1999 Supp. 8-262 is a criminal statute, and it must be strictly construed against the State. *State v. Evans*, 10 Kan. App. 2d 171, 173, 694 P.2d 912 (1985).

Breaking down the statute, the following elements are required to trigger the mandatory 90-day sentence: (1) a driver's license suspension resulting from a violation of 8-1567; (2) a conviction for driving while the driver's license is so suspended; (3) a conviction for violating 8-1567 (DUI) during the suspension period.

The State argues that an administrative suspension for failure of a blood alcohol test is a violation of 8-1567 for purposes of 8-

262(a)(4). The State's argument is twofold. First, while Gee's license was administratively suspended pursuant to 8-1014 prior to his conviction for violating 8-1567, the State argues that the administrative suspension would not have taken place but for Gee's violation of 8-1567. Second, the State takes the position that 8-262(a)(4) does not require that a person first be convicted of the violation of 8-1567, for which the license was originally suspended, to trigger the 90-day mandatory sentence.

The first prong of the State's argument is that the administrative suspension is simply the mechanism by which a person's license is suspended for violating 8-1567. The second prong of the State's argument hinges on the use in 8-262(a)(4) of the word "violation" rather than "conviction" of 8-1567 in defining the elements triggering the 90-day mandatory sentence. As the State correctly points out, the statute does not say that the suspension must be due to a conviction of 8-1567, only a violation of the statute. It is the State's position that the term "violation" does not equate to conviction.

Gee, on the other hand, argues that his license was not suspended for a violation of 8-1567, but was suspended as a result of administrative proceedings for a breath test failure pursuant to K.S.A. 8-1001 *et seq.* Gee argues that such administrative suspensions do not trigger the 90-day mandatory sentence of 8-262(a)(4). He contends that the statute clearly and unambiguously requires a suspension caused by a violation of 8-1567 and an administrative suspension for a breath test failure is not the same as a suspension for a violation of 8-1567. Gee correctly points out that there are considerable legal and procedural differences between a criminal prosecution under 8-1567 and an administrative suspension hearing. Significantly, he points out that an administrative hearing does not result in an acquittal or conviction.

K.S.A. 1999 Supp. 8-262(a)(4) specifically states that to trigger the 90-day mandatory sentence, the suspension must have been "for a violation of K.S.A. 8-1567, and amendments thereto, or any ordinance of any city or a law of another state, which ordinance or law prohibits the acts prohibited by that statute." It makes no reference to other statutory provisions or other types of license suspensions.

Under the K.S.A. 1999 Supp. 8-1567 provisions, it is unlawful for a person to operate a motor vehicle with an alcohol concentration of .08 or more grams of alcohol per 210 liters of breath or per 100 milliliters of blood. The penalties for violating the statute are contained within it. Among these is subsection (l), which states:

"Upon conviction of a person of a violation of this section or a violation of a city ordinance or county resolution prohibiting the acts prohibited by this section, the division, upon receiving a report of conviction, shall suspend, restrict or suspend and restrict the person's driving privileges as provided by K.S.A. 8-1014 and amendments thereto." K.S.A. 1999 Supp. 8-1567(l).

K.S.A. 1999 Supp. 8-1567 does not provide for the suspension of driving privileges prior to conviction. There is no reference to administrative proceedings prior to conviction.

The starting point for examining the administrative proceedings is K.S.A. 1999 Supp. 8-1001, the "Implied Consent" law. Under subsection (f) of this statute, if a person operating a motor vehicle submits to a breath test and "the test results show a blood or breath alcohol concentration of .08 or greater, the person's driving privileges shall be subject to suspension, or suspension and restriction, as provided in K.S.A. 8-1002 and 8-1014, and amendments thereto." K.S.A. 1999 Supp. 8-1001(f).

The next step in the analysis is K.S.A. 1999 Supp. 8-1002, which outlines the administrative procedure for a driver's license suspension following a BAC test refusal or failure. K.S.A. 1999 Supp. 8-1002(c) states that when a person has either refused or failed such a test, the administering officer "shall serve upon the person notice of suspension of driving privileges pursuant to K.S.A. 8-1014, and amendments thereto." K.S.A. 1999 Supp. 8-1014 details the time period of a driver's license suspension depending on whether it results from a BAC test refusal, test failure, or conviction of an alcohol- or drug-related crime. K.S.A. 1999 Supp. 8-1014(e) states that if a person is subject to suspension for a test refusal, a test failure, or an alcohol- or drug-related conviction arising from the same arrest, the suspension period shall not exceed the longest applicable period authorized by subsection (a), (b), or (c).

Upon receiving notice of a suspension pursuant to 8-1002, a person has the option to challenge the suspension in an adminis-

trative hearing. While many of the issues are the same, the administrative hearing is significantly different from a criminal DUI prosecution. As the Kansas Supreme Court has noted, many of the formalities required in a criminal prosecution are not required in an administrative hearing, the burden of proof is different, and a judgment of acquittal or conviction is not entered in an administrative hearing. *State v. Mertz*, 258 Kan. 745, 750, 907 P.2d 847 (1995).

A logical, step-by-step analysis of this statutory framework reveals an initial flaw in the State's reasoning. The State argues that Gee's administrative suspension would not have occurred but for his violation of 8-1567. However, under the statutory scheme, it is not the violation of 8-1567 that gives rise to the administrative suspension, but rather it is a BAC test failure or refusal that gives rise to both an alleged 8-1567 violation and an administrative suspension. *Podrebarac v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 383, 386, 807 P.2d 1327 (1991). The BAC test failure is the starting point for a parallel set of procedures, one criminal and one civil, that are independent of one another.

Both the criminal and statutory schemes define, independently, what constitutes a test failure. While both define a failure as a BAC of .08 or greater, one statutory scheme does not stem from the other. Moreover, there is a significant difference in how the criminal and civil actions are triggered. To be charged under 8-1567, the test failure must occur within 2 hours of operating or attempting to operate a vehicle. K.S.A. 1999 Supp. 8-1567(a)(2). To trigger an administrative suspension under 8-1001 *et seq.*, there is no 2-hour limit. The only limitation is that the officer administering the test must have "reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence." K.S.A. 1999 Supp. 8-1001(b).

In *Podrebarac*, the court recognized that "[t]he use of the term 'reasonable grounds' . . . indicates the legislature's intent to allow administrative suspensions for driving while intoxicated on less strict standards of proof than a criminal conviction." 15 Kan. App. 2d at 386. Thus, it is possible for a BAC test failure to trigger an administrative suspension but not trigger a charge of violating 8-

1567 (*e.g.*, if the test failure occurred 2½ hours after the person operated a vehicle). Therefore, one· cannot categorically say that administrative suspensions for a BAC test failure would not occur but for a violation of 8-1567.

It is also significant that K.S.A. 1999 Supp. 8-1014(e) distinguishes among a test refusal, a test failure, and an alcohol- or drug-related conviction. It does not treat them interchangeably. One does not necessarily lead to another, and a person's driver's license can be suspended for any of the three.

Looking again at the language of K.S.A. 1999 Supp. 8-262(a)(4), it specifically states that for the 90-day mandatory sentence to be triggered, the original license suspension must have been for a violation of 8-1567. This raises two questions: (1) what constitutes a violation of 8-1567, and (2) how does a person's license get suspended for such a violation?

The answer to the first question really hinges on whether the term "violation" equates to conviction. The State contends that it does not. The State points to the fact that 8-262(a)(4) uses the phrase "convicted of a violation" in two places, but in the part referring to the initial suspension, it uses only the phrase "violation of K.S.A. 8-1567." The State contends that the legislature purposely used the word violation in order to include administrative suspensions. However, the language is simply not that clear. The legislature could have included language specifically referring to administrative suspensions, but did not. The language chosen by the legislature is ambiguous.

The answer to the second question may shed some light on the first question. When analyzing the statutory scheme, it is apparent that there is only one way for a driver's license to be suspended for a violation of K.S.A. 1999 Supp. 8-1567. That way is pursuant to 8-1567(l), which states that a person's driving privileges shall be suspended, restricted, or both as provided by 8-1014, upon conviction of a violation of 8-1567. Thus, "violation of K.S.A. 8-1567" as used in K.S.A. 8-262(a)(4), can only mean conviction because that is the only way a person's license can be suspended under 8-1567.

Gee's driver's license was suspended pursuant to the administrative scheme of 8-1001, 8-1002, and 8-1014, not pursuant to the criminal framework of 8-1567. Because he had not been convicted of violating 8-1567 at the time of his second DUI arrest, his license suspension at that time cannot be considered to have been "for a violation of K.S.A. 8-1567," triggering the 90-day mandatory sentence under 8-262(a)(4). The phrase "violation of K.S.A. 8-1567," as used in the statute, is not sufficiently clear and unambiguous to lead one to the conclusion that the legislature intended to include administrative suspensions. Reasonable minds can come to different conclusions, and because this is a criminal statute, it must be strictly construed against the State. *Evans*, 10 Kan. App. 2d at 173.

If the legislature wishes to extend this provision to administrative proceedings, it may do so, but it has not.

We therefore vacate the sentence for driving while suspended and remand for resentencing.

Vacated and remanded for resentencing.