NOT DESIGNATED FOR PUBLICATION

No. 113,416

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEREK BRUMITT,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Opinion filed December 15, 2017. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*John D. Shultz*, deputy general counsel, of Legal Services, Kansas Department of Revenue, for appellee.

Before BRUNS, P.J., SCHROEDER, J., and HEBERT, S.J.


PER CURIAM:  Derek Brumitt appeals from the administrative suspension of his driver's license after a de novo trial in district court. On appeal, Brumitt contends that K.S.A. 2016 Supp. 8-1012 is unconstitutional. As a result, Brumitt argues that the district court erred in determining that reasonable grounds existed for requesting testing under the Kansas Implied Consent Law, K.S.A. 8-1001 et seq. We do not find K.S.A. 2016 Supp. 8-1012 to be unconstitutional nor do we find that the results of the tests, revealing that Brumitt's blood alcohol concentration was over the legal limit, should be suppressed. Thus, we affirm the administrative suspension of Brumitt's driver's license.

1

On January 6, 2013, Sergeant Tim Greenwood of the Hays Police Department observed that a license plate light was not functioning on Brumitt's vehicle. Sergeant Greenwood attempted to initiate a traffic stop by activating the emergency equipment on his patrol vehicle. However, Brumitt failed to stop his vehicle for another six blocks. Ultimately, Brumitt pulled his vehicle into a parking lot and stopped.

Although Sergeant Greenwood believed Brumitt's failure to stop could be an indication of impairment, he did not observe any other traffic violations. During the stop, Brumitt was able to provide his driver's license without difficulty. According to Sergeant Greenwood, Brumitt was reluctant to speak with him and kept avoiding eye contact. Sergeant Greenwood noted that it was difficult to determine whether Brumitt's speech was slurred because "he had a big ol' wad of dip" in his mouth. Sergeant Greenwood asked Brumitt if he had consumed any alcohol, and Brumitt initially indicated he had not had anything to drink that night. Later, Brumitt changed his answer and admitted that he drank a few beers at some point prior to the stop.

Sergeant Greenwood directed Brumitt to exit his vehicle to perform some field sobriety tests. The sergeant indicated that Brumitt was "awkward getting out of the vehicle." Moreover, the officer noted five clues of impairment during the "walk and turn" test. Specifically, Brumitt lost his balance during the instruction phase, stopped walking throughout the test, failed to touch heel to toe throughout the test, stepped off the line throughout the test, and used his arms for balance in the first portion of the test. According to Sergeant Greenwood, Brumitt failed to follow the instructions of the test as to how to walk. Sergeant Greenwood also had Brumitt complete the one-legged stand test, during which he swayed and "kept putting his foot down."

After these tests and after waiting 15 minutes, Sergeant Greenwood requested that Brumitt submit to a preliminary breath test (PBT). Brumitt consented by orally responding "Yes," and he participated in the test. The results of the PBT indicated that Brumitt would test over the legal limit of .08 on an evidentiary blood alcohol content test. Shortly after conducting the PBT, Sergeant Greenwood arrested Brumitt on suspicion of operating a vehicle under the influence of alcohol.

A subsequent evidentiary blood alcohol content test was performed, and the result of the test revealed that Brumitt's blood alcohol concentration was .08 or greater. Sergeant Greenwood also completed and served on Brumitt an Officer's Certification and Notice of Suspension (DC-27) form. On the DC-27 form, Sergeant Greenwood stated his reasonable grounds to believe that Brumitt had been under the influence of alcohol: odor of alcoholic beverages, failed sobriety tests, slurred speech, bloodshot eyes, difficulty in communicating, poor balance or coordination, admission to consuming alcohol, and failed PBT.

On January 11, 2013, Brumitt filed a request for an administrative hearing to review his driver's license suspension. The Kansas Department of Revenue (KDOR) held a hearing on the matter on June 26, 2013. At the hearing, Brumitt argued that Sergeant Greenwood did not have probable cause to arrest Brumitt or request an evidentiary blood alcohol content test. Ultimately, the administrative hearing officer disagreed with Brumitt and upheld the suspension of his driver's license.

On July 3, 2013, Brumitt filed a petition for judicial review of the administrative decision in district court. Ultimately, the district court held a trial de novo on February 11, 2015. Brumitt called Sergeant Greenwood as a witness, and the KDOR introduced the DC-27 form into evidence. The parties did not present further evidence. After the presentation of closing arguments by counsel, the district court found that Sergeant Greenwood had reasonable grounds to suspect that Brumitt had operated his vehicle

3

under the influence of alcohol. Accordingly, the district court affirmed the KDOR's administrative suspension of Brumitt's license.

ANALYSIS

The Kansas Judicial Review Act (KJRA) defines the scope of judicial review of state agency actions. K.S.A. 2016 Supp. 77-603(a); see *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). Appeals from administrative suspensions of driver's licenses are subject to review under the KJRA except that appeals to the district court are de novo. K.S.A. 2016 Supp. 8-259(a); see *Moser v. Kansas Dept. of Revenue*, 289 Kan. 513, 516, 213 P.3d 1061 (2009). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity—in this case Brumitt. K.S.A. 2016 Supp. 77-621(a)(1).

We review a district court's ruling in a driver's license suspension case for substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012); see *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 118, 200 P.3d 496 (2009). Notwithstanding the KDOR's invitation to do so, we find it unnecessary in this case to delve into the issue of whether or not the negative finding standard is applicable in driver's license suspension cases reviewed under the KJRA. Instead, we will follow the direction given to us by the Legislature in K.S.A. 2016 Supp. 77-621(c)(7) and review the record on appeal to determine if the district court's decision is based on evidence that is substantial when viewed in light of the record as a whole. See K.S.A. 2016 Supp. 77-621(c)(7).

Substantial competent evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Gannon v. State*, 298 Kan. 1107, 1175, 319 P.3d 1196 (2014). Whether substantial competent evidence exists is a question of law. *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66

4

(2010). However, in evaluating the evidence presented at trial, we are not to weigh conflicting evidence nor are we to evaluate the credibility of witnesses. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009).

We note that the administrative suspension or restriction of a driver's license is separate and distinct from the bringing of criminal charges against the driver stemming from the same incident. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 642, 176 P.3d 938 (2008); *State v. Gee*, 27 Kan. App. 2d 739, 743, 8 P.3d 45 (2000). A driver's failure of a breath test or refusal to submit to testing is often the "starting point for a parallel set of procedures, one criminal and one civil, that are independent of one another." 27 Kan. App. 2d at 743. In fact, K.S.A. 2016 Supp. 8-1020(t) specifically states that the disposition of criminal charges against a driver "shall not affect the suspension or suspension and restriction to be imposed under this section."

Furthermore, the Kansas Supreme Court has held that there is no remedy for violations of the Fourth Amendment to the United States Constitution in administrative driver's license cases. Specifically, our Supreme Court determined in *Martin* that the exclusionary rule generally does not apply in administrative suspension of driving privileges cases. See *Martin*, 285 Kan. 625, Syl. ¶ 8. Since the *Martin* decision, multiple panels of our court have also held that the exclusionary rule does not apply in administrative appeals. See *Witthuhn v. Kansas Dept. of Revenue*, No. 115,220, 2017 WL 947271, at *2 (Kan. App. 2017) (unpublished opinion); *Maupin v. Kansas Dept. of Revenue*, No. 115,068, 2016 WL 5867243, at *2 (Kan. App. 2016) (unpublished opinion); *Schwerdt v. Kansas Dept. of Revenue*, No. 110,086, 2014 WL 3294078, at *3 (Kan. App. 2014) (unpublished opinion).

Accordingly, "a petitioner may *raise* Fourth Amendment claims, but such claims have *no practical effect* (meaning such claims do not trigger the exclusion of resultant evidence) in the administrative context." *Kingsley v. Kansas Dept. of Revenue*, 288 Kan.

390, 396, 204 P.3d 562 (2009) (citing *Martin*, 285 Kan. at 646). Although we do not find Brumitt's argument regarding the constitutionality of K.S.A. 2016 Supp. 8-1012 persuasive, as a practical matter we do not exclude otherwise admissible evidence in driver's license suspension cases. Moreover, appellate courts generally avoid addressing unnecessary constitutional questions where valid alternative grounds for relief exist. *State ex. rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d 282 (2016).

Based on our review of the record in this case, we conclude that the district court did not err in finding that Brumitt failed to meet his burden to prove the invalidity of the KDOR's action. Rather, we find there is substantial competent evidence based on our review of the record as a whole to support a finding that Sergeant Greenwood had sufficient evidence of intoxication to request that Brumitt submit to an evidentiary blood alcohol content test under K.S.A. 2012 Supp. 8-1001(b), which states:

> "A law enforcement officer shall request a person to submit to a test . . . [i]f the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, . . . and . . . [t]he person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both, . . . in violation of a state statute or a city ordinance . . . . The law enforcement officer directing administration of the test or tests may act on personal knowledge or on the basis of the collective information available to law enforcement officers involved in the accident investigation or arrest."

Hence, a law enforcement officer has authority to request blood alcohol content testing if the officer has *reasonable grounds to believe* the driver was operating a vehicle while under the influence of alcohol and the officer has arrested or taken the driver into custody. "Reasonable grounds" under the Implied Consent Law is analogous to "probable cause." See *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, Syl. ¶¶ 3-4, 290 P.3d 555 (2012). Probable cause is the reasonable belief—drawn from the totality of the

6

circumstances and reasonable inferences known to the law enforcement officer—that the defendant has committed or is committing a specific act. See *State v. Hardy*, 305 Kan. 1001, 1011, 390 P.3d 30 (2017) (citing *Sloop*, 296 Kan. at 20) (probable cause is determined by evaluating the totality of the circumstances).

Here, a review of the record reveals that at the time of the request, Sergeant Greenwood had a reasonable belief to ask Brumitt to submit to an evidentiary breath test. Based on the trial testimony of Sergeant Greenwood and on the statements set forth in the DC-27 form, there is evidence of several indicators that Brumitt was driving under the influence of alcohol. K.S.A. 2016 Supp. 8-1002(b) provides that a "signed certification or a copy or photostatic reproduction [of a DC-27 form] shall be admissible in evidence in all proceedings brought pursuant to this act, and receipt of any such certification, copy or reproduction shall accord the department authority to proceed as set forth herein." As such, the statements contained in the DC-27 form are admissible evidence that can be considered by a district court in an administrative suspension case regardless of whether the certifying officer testifies at trial. *Pfeifer v. Kansas Dept. of Revenue*, 52 Kan. App. 2d 591, 601, 370 P.3d 1200 (2016).

Based on the testimony of Sergeant Greenwood and the contents of the DC-27 form, we find that the officer had the following information when he requested the evidentiary blood alcohol content test:

- Brumitt had failed to stop his vehicle for six blocks while being pursued by a patrol vehicle with its emergency equipment on;
- Brumitt smelled of alcohol;
- Brumitt had bloodshot eyes;
- Brumitt had some difficulty communicating;
- Brumitt initially denied drinking but later admitted that he had a few beers;

7

- Brumitt was awkward getting out of the vehicle and appeared to be impaired;

- Brumitt displayed five clues of impairment on the "walk and turn" field sobriety test;

- Brumitt displayed two clues of impairment on the "one-leg stand" field sobriety test; and,

- Brumitt consented to taking a PBT and the results indicated that he would test over .08.

Despite his arguments to the contrary, Brumitt carried the burden of proof at the de novo trial and in this appeal to show the invalidity of the action taken by the KDOR in suspending his driver's license. Our review of the record on appeal leads us to the conclusion that he has failed to meet this burden. Instead, we find substantial competent evidence to support the district court's conclusion that Sergeant Greenwood had reasonable grounds to request an evidentiary test.

Affirmed.